IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

RUBEN LAROTA-FLOREZ et al.,           )
                                       )
       Plaintiffs,                     )
                                       )
v.                                     )   Civil Action No.# 01:09cv1181
                                       )
                                       )
GOLDMAN SACHS MORTGAGE CO.             )
et al.,                                )
       Defendants.                     )

## MEMORANDUM OPINION

This comes before the Court on Defendant's Motion for Summary Judgment. On September 14, 2006, Plaintiffs purchased the Property from Centex Homes for $394,570. Defendant CTX Mortgage Company, LLC ("CTX") originated and funded Plaintiffs' Loans to purchase the Property. The Loans are evidenced by two promissory notes signed by Plaintiff on September 14, 2006. The Note for the first mortgage was in the amount of $315,656. The Note for the second mortgage was in the amount of $78,900. The Loans are secured by two deeds of trust signed by Plaintiffs on September 14, 2006 and recorded on September 15, 2006.

Plaintiffs defaulted on their mortgage and the Property was scheduled for foreclosure in accordance with Virginia law. Plaintiffs filed their Complaint on September 1, 2009, just one hour before the properly noticed foreclosure following

Plaintiffs' failure to pay their mortgage since November 2008.

On October 19, 2009, Defendants removed the action to this Court based on Plaintiffs' FDCPA, TILA, and constitutional claims and the Court's federal question jurisdiction. Defendants filed motions to dismiss the Complaint. The remaining claims in Plaintiffs' Amended Complaint are for declaratory judgment (Counts I and II) and quiet title (Count IV). These causes of action assert that no one has legal or equitable authority to foreclose on the Plaintiffs' property despite Plaintiffs' default and failure to pay their mortgage for over a year.

Shortly after closing, CTX sold the First Note to GSMC. CTX's sale and transfer of the original First Note to GSMC is evidenced the Allonge to the First Note with endorsements from CTX to GSMC and from GSMC "in blank." There is no evidence that GSMC never securitized the First Note. On January 19, 2007, GSMC sold the First Note to FreddieMac. GSMC never acquired or had any beneficial interest in the Second Note.

Avelo Mortgage, LLC ("Avelo") serviced the First Note through June 2008. Effective July 1, 2008, the servicing of the First Note, including the right to collect payments from Plaintiffs, transferred from Avelo to Litton. On June 10, 2008, Avelo sent Plaintiff a letter informing him of the transfer of Loan servicing to Litton. On July 10, 2008, Litton sent Plaintiff a welcome letter as the new servicer of the Loan. Litton has

continued to service the First Note and has the right to collect payments on behalf of the holder, including the right to foreclose in the event of default. Litton never serviced or had any beneficial interest in the Second Note.

Plaintiff failed to meet his monthly payment obligations under the First Note. Plaintiff's August 1, 2008 payment on the First Note was returned due to insufficient funds. Plaintiff was late the next two months on payments due under the First Note. Plaintiff's last payment on the First Note was November 3, 2008, which was credited to the overdue payment for October 1, 2008. As of December 2, 2008, Plaintiff was over sixty (60) days overdue on the First Note. Thereafter, Plaintiff has been in default on his repayment obligations under the First Note and Deed of Trust.

Following Plaintiff's default under the First Note, Litton sent Plaintiff a letter, dated December 18, 2008, notifying him of default. Plaintiff failed to bring his payments on the First Note current, and has not made any additional payments on the First Note since November 3, 2008.

The Deed of Trust securing the First Note identifies Mortgage Electronic Registration Systems, Inc. ("MERS") and its successors and assigns as the beneficiaries of the security instrument, and grants to them the right to exercise any of the lender CTX's interests in the Deed of Trust, including the right to foreclose and sell the Property. MERS assigned and transferred

to Litton all of MERS' rights and interest in the Deed of Trust securing the First Note as evidenced by an Assignment dated April 15, 2009. Litton appointed Professional Foreclosure Corporation of Virginia ("Professional") as substitute trustee of the Deed of Trust securing the First Note as evidenced by an Appointment of Substitute Trustee dated July 15, 2009. To collect on the amount owed on the First Note secured by the Deed of Trust on the Property, Professional, by counsel, notified Plaintiffs that the Property would be sold at a foreclosure sale on September 1, 2009 at 11:30 a.m. at Fairfax County Circuit Court. Professional has possession of the original First Note and Deed of Trust bearing Plaintiffs' original ink signatures. Plaintiffs filed their Complaint on September 1, 2009 at 10:41 a.m. The foreclosure sale scheduled for September 1, 2009 did not occur.

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56(b). Summary judgment should be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In such situations, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. As the Fourth Circuit has held:

Though the burden of proof rests initially with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon the bald assertions of his pleadings. Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), rev'd on other grounds, 490 U.S. 228 (1989). Indeed, trial judges have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

To survive summary judgment, Plaintiffs must present "'specific facts showing that there is *a genuine issue for trial.'*" Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting Fed. R. Civ. P. 56(e))(emphasis in original). It is not enough "simply [to] show that there is some metaphysical doubt as to the material facts." Id. at 586. Nor is the mere existence of a scintilla of evidence or "unsupported speculation" adequate to defeat a summary judgment motion. Baber v. Hospital Corp. of Am., 977 F. 2d 872, 875 (4th Cir. 1992). The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case" to avoid summary judgment. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883 (1990). "A trial, after all, is

not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes." Commc'ns Satellite Corp., 759 F.2d at 364.

Plaintiffs assert that none of the Defendants "has authority under the Deed of Trust to enforce the terms thereto" or "can demonstrate or establish that a default exists with respect to Plaintiff's promissory note" are completely contradictory to the undisputed facts evidenced by sworn testimony and supporting documents. Plaintiff has not come forward with any evidence to show that Defendants have done anything other than exercise their lawful contractual rights. As servicer of the First Note, Litton appointed Professional to foreclose after Plaintiff's default. The undisputed facts show Professional has authority to foreclose.

Plaintiffs' remaining claims in the Amended Complaint for declaratory judgment (Counts I & II) and quiet title (Count IV) cannot withstand summary judgment. Both of Plaintiffs' claims are based on two arguments that fail as a matter of law. First, Plaintiffs assert that Defendants lack "authority" to foreclose under Virginia's non-judicial foreclosure statutes. Second, Plaintiffs argue that loan securitization bars foreclosure because securitization "splits" the Note from the Deed of Trust or because "credit enhancements" related to securitized notes absolve borrowers of any liability under a mortgage loan as a

"double recovery."

Litton has authority to foreclose on the Property to enforce the Deed of Trust securing the First Note for two reasons: (1) Litton is assignee of MERS' rights under the Deed of Trust; and (2) Litton is the servicer of First Note owned by Freddie Mac. Either scenario entitles Litton to appoint a substitute trustee to foreclose in the event of Plaintiffs' default. Professional has authority to foreclose on the Property pursuant to Litton's appointment and because it is in possession of the original First Note and Deed of Trust. As discussed more fully below, the chain of legal title is complete and foreclosure is authorized. Virginia is a non-judicial foreclosure state. Virginia Code § 55-59(7) states the authority of the trustee to foreclose and sell property provided as security for a loan as follows:

> In the event of default in the payment of the debt secured, or any part thereof, at maturity, or in the payment of interest when due, or of the breach of any of the covenants entered into or imposed upon the grantor, then at the request of any beneficiary the trustee shall forthwith declare all the debts and obligations secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same at auction . . . .

Litton appointed Professional as Substitute Trustee with authority to foreclose on the Deed of Trust securing the First Note. Professional's appointment is evidenced by a recorded Appointment of Substitute Trustee, dated July 15, 2009. Plaintiffs' last payment on the First Note was in November 2008.

Litton notified them of the default and intent accelerate in December 2008, and Plaintiffs have been in default since that time. Professional has possession of the original First Note and Deed of Trust, and properly notified Plaintiffs of the foreclosure sale. These undisputed facts, known to Plaintiffs, demonstrate Professional's authority to foreclose and prove foreclosure was legally justified. Nonetheless, Plaintiffs filed the Complaint containing false assertions of fact and legal claims contrary to established Virginia foreclosure law.

Further, Professional is in possession of the original First Note and Deed of Trust, including the endorsement "in blank" by GSMC. Therefore, as the holder of a negotiable instrument, Professional has authority to foreclose under established Virginia law even without the Appointment of Substitute Trustee. See Va. Code §§ 8.3A-201 & -205 (stating that an instrument payable to the bearer, i.e. endorsed in blank, may be negotiated by possession alone, and such bearer is the holder of the instrument); Va. Code § 8.3A-301 (stating that the holder of the instrument is entitle to enforce it).

The Deed of Trust expressly confers authority on MERS and its successors and assigns to foreclose on the Property upon Plaintiff's default:

> TRANSFER OF RIGHTS IN THE PROPERTY
>
> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors

> and assigns) and the successors and assigns of MERS.
> This Security Instrument secures to Lender: (i) the
> repayment of the Loan, and all renewals, extensions and
> modifications of the Note; and (ii) the performance of
> Borrower's covenants and agreements under this Security
> Instrument and the Note. For this purpose, Borrower
> irrevocably grants and conveys to Trustee, in trust,
> with power of sale, the [Property].
>
> . . . . Borrower understands and agrees that MERS holds
> only legal title to the interests granted by Borrower
> in this Security Instrument, but, if necessary to
> comply with law or custom, MERS (as nominee for Lender
> and Lender's successors and assigns) has the right: to
> exercise any or all of those interests, **including but
> not limited to, the right to foreclose and sell the
> Property**; and to take any action required of Lender
> including, but not limited, to releasing and canceling
> this Security Instrument.

Plaintiffs' signature evidences their agreed that MERS had the authority to foreclose and to take any action required of the Lender (CTX). Plaintiffs understood that the Property would be foreclosed in the event that they defaulted on their loan repayment obligations. MERS assigned to Litton its interest in the Deed of Trust, including its right to foreclose and to appoint substitute trustees, as evidenced by the Assignment dated April 15, 2009. Therefore, Litton had the authority foreclose and to appoint Professional as substitute trustee to conduct the foreclosure sale.

Litton also has authority to foreclose on the Property as servicer of the First Note. Shortly after closing, CTX sold the First Note to GSMC. By signing the First Note, Plaintiff expressly agreed that CTX may transfer its authority as Lender to

subsequent holders: "I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"

On behalf of GSMC, Avelo Mortgage, LLC ("Avelo") serviced the First Note through June 2008. Effective July 1, 2008, the servicing of the First Note, including the right to collect payments from Plaintiffs, transferred from Avelo to Litton. Avelo and Litton sent letters to Plaintiff notifying him of the change in the servicing of the First Note. GSMC sold the First Note to Freddie Mac, and Litton continues to service it. As servicer, Litton has the right to collect payments on behalf of the holder and the right to foreclose upon default. Therefore, Litton's appointment of Professional as substitute trustee under the Deed of Trust was authorized as a matter of contract and agency law.

Litton had authority to foreclose and exercised that authority to appoint Professional as trustee to sell the Property at foreclosure.

The undisputed evidence demonstrates that Litton has authority to foreclose, and appointed Professional to exercise that authority. Plaintiffs remaining arguments, pled in the alternative, are that securitization of the Loans somehow entitles them to keep the proceeds of the Loans and own the secured Property free and clear.

Plaintiffs argue, "Given the splitting, selling, trading, and insuring of the pieces of the Notes on the secondary market, the Deeds of Trust are split from the Notes and are unenforceable, and any liens should be struck from the land records." There is no evidence that MERS, Litton, nor GSMC securitized either the First Note or Second Note. Further, none of these Defendants are owners of either the First Note or Second Note. Regardless, Virginia law is clear that the negotiation of a note or bond secured by a deed of trust or mortgage carries with it that security. See, e.g., Stimpson v. Bishop, 82 Va. 190, 200-01 (1886) ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). In Williams v. Gifford, the Supreme Court of Virginia ruled:

> [I]n Virginia, as to common law securities, the law is that both deeds of trust and mortgages are regarded in equity as mere securities for the debt and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it.

139 Va. 779, 784 (1924). Thus, even if, as Plaintiffs assert without any factual support, there has been a so-called "split" between the Note and the Deed, the purchaser of the First Note, in this case GSMC and then Freddie Mac, received the debt in equity as a secured party.

There is no legal or equitable obligation to notify Plaintiffs of any such sale of the First Note. Indeed, Plaintiffs

Plaintiffs argue, "Given the splitting, selling, trading, and insuring of the pieces of the Notes on the secondary market, the Deeds of Trust are split from the Notes and are unenforceable, and any liens should be struck from the land records." There is no evidence that MERS, Litton, nor GSMC securitized either the First Note or Second Note. Further, none of these Defendants are owners of either the First Note or Second Note. Regardless, Virginia law is clear that the negotiation of a note or bond secured by a deed of trust or mortgage carries with it that security. See, e.g., Stimpson v. Bishop, 82 Va. 190, 200-01 (1886) ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). In Williams v. Gifford, the Supreme Court of Virginia ruled:

> [I]n Virginia, as to common law securities, the law is that both deeds of trust and mortgages are regarded in equity as mere securities for the debt and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it.

139 Va. 779, 784 (1924). Thus, even if, as Plaintiffs assert without any factual support, there has been a so-called "split" between the Note and the Deed, the purchaser of the First Note, in this case GSMC and then Freddie Mac, received the debt in equity as a secured party.

There is no legal or equitable obligation to notify Plaintiffs of any such sale of the First Note. Indeed, Plaintiffs

Plaintiffs argue, "Given the splitting, selling, trading, and insuring of the pieces of the Notes on the secondary market, the Deeds of Trust are split from the Notes and are unenforceable, and any liens should be struck from the land records." There is no evidence that MERS, Litton, nor GSMC securitized either the First Note or Second Note. Further, none of these Defendants are owners of either the First Note or Second Note. Regardless, Virginia law is clear that the negotiation of a note or bond secured by a deed of trust or mortgage carries with it that security. See, e.g., Stimpson v. Bishop, 82 Va. 190, 200-01 (1886) ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). In Williams v. Gifford, the Supreme Court of Virginia ruled:

> [I]n Virginia, as to common law securities, the law is that both deeds of trust and mortgages are regarded in equity as mere securities for the debt and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it.

139 Va. 779, 784 (1924). Thus, even if, as Plaintiffs assert without any factual support, there has been a so-called "split" between the Note and the Deed, the purchaser of the First Note, in this case GSMC and then Freddie Mac, received the debt in equity as a secured party.

There is no legal or equitable obligation to notify Plaintiffs of any such sale of the First Note. Indeed, Plaintiffs

agreed that the Note or interests in the Note could be sold "one or more times without prior notice to Borrower."

Additionally, federal law explicitly allows for the creation of mortgage-related securities, such as the Securities Act of 1933 and the Secondary Mortgage Market Enhancement Act of 1984. Indeed, pursuant to 15 US.C. § 77r-1, "[a]ny person, trust, corporation, partnership, association, business trust, or business entity . . . shall be authorized to purchase, hold, and invest in securities that are . . . mortgage related securities." Id. § 77r-1(A)(1)(B). Foreclosures are routinely and justifiably conducted by trustees of securitized mortgages. Therefore, Plaintiffs arguments for declaratory judgment and quiet title based on the so-called "splitting" theory fail as a matter of law.

Plaintiffs argue, "Any alleged obligation of Plaintiffs was satisfied once the default was declared, because the various credit enhancement policies paid out making any injured party whole." According to Plaintiffs, foreclosure on the Property to collect on payment owed under the First Note will result in a double recovery prohibited by Virginia statute and case law. However, Plaintiffs' double recovery argument against Defendants is based on false assumptions because neither MERS, Litton, nor GSMC own the Notes or securitized the Notes. Therefore, none of the named Defendants could receive a "double recovery," assuming

such claim existed. More specifically, neither MERS, Litton, nor GSMC is party to a "credit enhancement" policy for the securitization of the First Note because none of them own or securitized the First Note. Even assuming that Plaintiffs had a factual basis for their "double recovery" claim, no provision in the U.S. or Virginia Codes supports Plaintiffs' argument that credit enhancements or credit default swaps ("CDS") are unlawful. No decision from any court in any jurisdiction supports such a claim.

Plaintiffs' double recovery theory ignores the fact that a CDS contract is a separate contract, distinct from Plaintiffs' debt obligations under the reference credit (i.e. the Note). The CDS contract is a "bilateral financial contract" in which the protection buyer makes periodic payments to the protection seller. See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 172 (2d Cir. 2004). If the credit event occurs, the CDS buyer recovers according to the terms of the CDS contract, not the reference credit. Any CDS "payout" is bargained for and paid for by the CDS buyer under a separate contract. See In re Worldcom, Inc. Sec. Litig., 346 F. Supp. 2d 628, 651 n.29 (S.D.N.Y. 2004) (explaining that a premium is paid on a swap contract to the seller for credit default protection, and if the default event does not occur, payer has only lost the premium). CDS do not, as Plaintiffs suggest, indemnify the buyer

of protection against loss, but merely allow parties to balance risk through separate third party contracts. Therefore, Plaintiffs' "double recovery" argument fails as a matter of law.

For these reasons, summary judgment should be GRANTED to the Defendants. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
April 8, 2010